IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 13-00279-01-CR-W-DW |
| MARK L. FLAAEN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

Before the court is Defendant's motion to suppress. Defendant moves the Court to suppress all evidence obtained from the April 24, 2013 search of his residence. For the following reasons, Defendant's motion should be denied.

### I. BACKGROUND

Defendant is charged with one count of being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and one count of possession of a controlled substance, in violation of 21 U.S.C. § 844(a).

Currently pending before the Court is Defendant's motion to suppress (Doc. No. 11). The government appeared at the suppression hearing by Assistant United States Attorney Rudolph Rhodes. Defendant was present, represented by retained counsel Angela Hasty. United States Probation Officers Paul Sedler, Terry Koan, Gary Broyles and Michael Mattivi testified on behalf of the Government. Defendant called Independence, Missouri Police Department Detective Keith Rosewaren to testify. The following exhibits were admitted into evidence:

1

| | |
|---|---|
| Government's Exhibit 1: | Judgment and Conviction in Case No. 02-00137-01-CR-W-DW |
| Government's Exhibit 2: | Judgment for Revocation of Supervised Release in Case No. 02-00137-01-CR-W-DW |
| Government's Exhibit 3: | U.S. Probation and Pretrial Service Office Receipt for Property/Chain of Custody |
| Defendant's Exhibit 1: | Copy of Search Video |
| Defendant's Exhibit 2: | Douglas Callaghan's Platte County, Missouri motion to suppress |

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1. On January 9, 2003, Defendant was sentenced for being a felon in possession of a firearm (Tr. at 7; Gvt. Exh. 1). He was sentenced to 100 months custody and five years of supervised release (Tr. at 8; Gvt. Exh. 1).

2. Defendant's supervision began on September 10, 2010 (Tr. at 7). That term of supervision was revoked on July 21, 2011 (Tr. at 7, 8; Gvt. Exh. 2). Defendant served a brief period of time and then began a new term of supervised release on September 21, 2012 (Tr. at 7).

3. United States Probation Officer Paul Sedler met with Defendant on September 25, 2012 (Tr. at 9). During the meeting, they reviewed the Revocation Judgment and Commitment, including the conditions of release (Tr. at 10). One such condition pertained to submitting to searches (Tr. at 10-11). This condition read:

> The defendant shall submit his person, residence, office or vehicle to a search conducted by a U.S. Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of condition of release. Failure to submit to a search may be grounds for revocation. And the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

(Gvt. Exh. 2; Tr. at 10-11). Another condition prohibited Defendant from possessing a firearm

(Gvt. Exh. 2).

4. In February of 2013, Probation Officer Sedler received a call from a probation officer who was supervising Defendant's girlfriend (Tr. at 11). That officer indicated Defendant's girlfriend said he had beat her up and that she clearly had injuries (Tr. at 11).

5. On March 19, 2013, Probation Officers Sedler and Terry Koan stopped at Defendant's residence located at 811 East U.S. 34 Highway in Independence, Missouri, to do a home visit (Tr. at 12, 50). There were lights on at the residence and cars in the back, but nobody answered the door when Officer Sedler initially knocked (Tr. at 13, 50). Officer Sedler then walked to the front of the house, during which time Proabation Officer Koan inspected vehicles in the back yard with his flashlight (Tr. at 50, 57). Defendant emerged on the back porch and asked Probation Officer Koan what he was doing looking around the cars (Tr. at 13, 50). Probation Officer Koan knew it was Defendant, but still asked him if he was "Mark Flaaen," to which Defendant responded in the negative (Tr. at 51, 58). Probation Officer Koan identified himself and again ask Defendant if he was "Mark Flaaen"; Defendant did not respond (Tr. at 51).

6. Soon, Probation Officer Sedler returned to where Defendant and Probation Officer Koan were talking (Tr. at 13, 51). Defendant was pretty wound up, appearing very excited and not too happy to be having the conversation with Probation Officer Koan (Tr. at 13-14). When Probation Officer Koan asked Defendant to show his hands, Defendant became combative and verbally belligerent (Tr. at 51).

7 Probation Officer Sedler explained that Officer Koan was his co-worker, and asked Defendant to calm down; Defendant eventually complied (Tr. at 14).

8. Probation Officers Sedler and Koan then entered Defendant's residence (Tr. at

14). Defendant's girlfriend as well as a male who Defendant indicated was his brother were present (Tr. at 14, 52). Probation Officer Sedler did not observe any signs of physical abuse to Defendant's girlfriend at the time of the visit (Tr. at 26). The male was later identified as William Davis (Tr. at 52).

9. While inside, Probation Officers Sedler and Koan noticed surveillance equipment that had the perimeter of the residence on a television (Tr. at 15, 52-53). Defendant remained agitated with Probation Officer Koan (Tr. at 14, 53).

10. On April 22, 2013, Probation Officer Sedler received notice that Defendant had contact with Independence, Missouri police with regard to a reported assault of an elderly gentleman (Tr. at 15). Probation Officer Sedler picked up a copy of the police report from the Independence, Missouri Police Department then went to Defendant's residence (Tr. at 15-16). Upon arrival, Probation Officer Sedler knocked on the door to which there was no answer (Tr. at 16). All of a sudden, an unknown individual who identified himself as "Doug" appeared and said Defendant had just left to run errands with his mother (Tr. at 16, 27-28).

11. On April 24, 2013, Probation Officer Sedler received a phone call from a detective indicating he had received information from a confidential informant that Defendant had been involved in a burglary and that Defendant was storing some of the items from the burglaries at a residence associated with Defendant located at 803 East College, Independence, Missouri (Tr. at 16-17, 30-31, 83-84). The detective indicated they had obtained a search warrant for that address (Tr. at 17).

12. The confidential informant stated that he and Defendant had committed the burglaries (Tr. at 17). He also stated he was at Defendant's residence on April 22, 2013, and made contact with Probation Officer Sedler (Tr. at 17). The stolen property was allegedly

4

being held at a residence associated with Defendant, although not his personal residence (Tr. at 32). Although the confidential informant told Probation Officer Sedler that Defendant was running errands with his mother, they had just finished committing the burglary and Defendant was, instead hiding inside his residence with the gun he used to break out a window when they burglarized the house (Tr. at 17, 29).

13. Because the confidential informant identified himself as having been at Defendant's residence, having had contact with Probation Officer Sedler two days earlier, and the fact that a lot of the information the informant provided matched what law enforcement said took place, Officer Sedler believed it to be reliable information (Tr. at 18, 29).

14. Probation Officer Sedler understood that the Independence, Missouri Police Department obtained a warrant to search a different address associated with Defendant for the stolen property (Tr. at 17, 18, 30). Because they would not be looking for a gun, Officer Sedler remained concerned about continuing to make home visits at Defendant's personal residence (Tr. at 18, 31). Based on Defendant's history of burglaries, history of possessing guns, recent history of potential assault with his girlfriend, alleged assault of the elderly gentlemen and his actions toward Probation Officer Koan on March 19, 2013, Probation Officer Sedler requested permission to conduct a search of Defendant's residence (Tr. at 18, 31, 32-33). Chief Probation Officer Kevin Lyon granted approval to do a search to look for a gun (Tr. at 18, 33).

15. Probation Officers Sedler decided the safest way to search the residence would be to conduct the search at the same time the Independence Police Department was executing its warrant on the other address associated with Defendant (Tr. at 18-19, 33).

16. The plan was for Probation Officers Sedler and Kurt Habiger to make contact

5

with Defendant at his residence like normal (Tr. at 19). Officer Habiger would have an open telephone or microphone to other members of the search team and once they were inside the residence, other probation officers would clear the residence for safety and then perform the search (Tr. at 19). Pursuant to normal procedure, members of the Independence, Missouri Police Department would secure the perimeter of the residence for safety (Tr. at 20, 85, 86).

17. Two briefings were conducted before the search; one amongst the five probation officers involved, and a second at the Independence, Missouri Police Department (Tr. at 33). There were approximately twenty people present at the briefing at the police department, including Independence, Missouri Police Officers and the Platte County Sheriff (Tr. at 34).

18. Five total probation officers were involved in the actual search of Defendant's residence on April 24, 2013 (Tr. at 19-20). There were two or three members of the Independence, Missouri Police Department present (Tr. at 22, 87). Probation Officer Sedler was dressed in normal field attire – khaki slacks, a polo-type shirt and a bulletproof vest (Tr. at 21). All of the probation officers were armed, but the firearms were concealed by a cover garment (Tr. at 43, 47, 56). The other probation officers were dressed in khaki pants, a black shirt that said "Federal Officer" in yellow lettering and a jacket that said "Federal Officer" (Tr. at 44).

19. At approximately 6:30 p.m., Probation Officers Sedler and Habiger made contact with Defendant and informed him they were going to conduct a search of his residence pursuant to the search condition (Tr. at 20, 40-41). Defendant initially became very upset upon seeing the Independence, Missouri police officers (Tr. at 21). Probation Officer Sedler informed Defendant the police officers would not be conducting the search, but were there to help with safety issues (Tr. at 21). Defendant told Probation Officer Sedler that the probation officers

6

could look around and search whatever they wanted, but that he did not want the Independence police officers to search anything (Doc. No. 22, 39).

20. Defendant took a Xanax to help calm down (Tr. at 40).

21. Probation Officer Habiger conducted a pat-down of Defendant (Tr. at 37).

22. Probation Officer Sedler stayed with Defendant throughout the course of the search (Tr. at 22). Officer Sedler did not make any threats or promises to Defendant during this time (Tr. at 22). The three other probation officers cleared Defendant's residence for safety (Tr. at 36, 53). Upon entry, the probation officers announced, "Federal Officer. Search." (Tr. at 69). They then conducted a search, looking for a gun and possibly drugs (Tr. at 45).

23. The search lasted approximately two hours (Tr. at 41). Only probation officers searched the residence (Tr. at 56, 74, 89).

24. Probation Officer Koan found a black duffel bag underneath a covered table; the bag was full of ammunition (Tr. at 55, 61-62; Gvt. Exh. 3). Officer Broyles located a black bag on a shelf in a closet that contained ammunition, a Crown Royal bag containing hypodermic needles, a prescription bottle with Defendant's name on it, and a couple of bags of methamphetamine (Tr. at 67, 70; Gvt. Exh. 3). A gun magazine was also recovered from the bedroom (Tr. at 68; Gvt. Exh. 3). Probation Officer Mattivi was the evidence custodian responsible for documenting and collecting items recovered during the search (Tr. at 75-76; Gvt. Exh. 3). Probation Officer Mattivi also field tested the drugs (Tr. at 76, 77).

25. The recovered contraband was turned over to the Independence, Missouri Police Department (Tr. at 24, 45-46, 76-77, 93; Gvt. Exh. 3).

26. Defendant's residence was videotaped both before and after the search (Tr. at

7

Case 4:13-cr-00279-SRB   Document 64   Filed 06/10/15   Page 7 of 10

could look around and search whatever they wanted, but that he did not want the Independence police officers to search anything (Doc. No. 22, 39).

20. Defendant took a Xanax to help calm down (Tr. at 40).

21. Probation Officer Habiger conducted a pat-down of Defendant (Tr. at 37).

22. Probation Officer Sedler stayed with Defendant throughout the course of the search (Tr. at 22). Officer Sedler did not make any threats or promises to Defendant during this time (Tr. at 22). The three other probation officers cleared Defendant's residence for safety (Tr. at 36, 53). Upon entry, the probation officers announced, "Federal Officer. Search." (Tr. at 69). They then conducted a search, looking for a gun and possibly drugs (Tr. at 45).

23. The search lasted approximately two hours (Tr. at 41). Only probation officers searched the residence (Tr. at 56, 74, 89).

24. Probation Officer Koan found a black duffel bag underneath a covered table; the bag was full of ammunition (Tr. at 55, 61-62; Gvt. Exh. 3). Officer Broyles located a black bag on a shelf in a closet that contained ammunition, a Crown Royal bag containing hypodermic needles, a prescription bottle with Defendant's name on it, and a couple of bags of methamphetamine (Tr. at 67, 70; Gvt. Exh. 3). A gun magazine was also recovered from the bedroom (Tr. at 68; Gvt. Exh. 3). Probation Officer Mattivi was the evidence custodian responsible for documenting and collecting items recovered during the search (Tr. at 75-76; Gvt. Exh. 3). Probation Officer Mattivi also field tested the drugs (Tr. at 76, 77).

25. The recovered contraband was turned over to the Independence, Missouri Police Department (Tr. at 24, 45-46, 76-77, 93; Gvt. Exh. 3).

26. Defendant's residence was videotaped both before and after the search (Tr. at

38-39; Def. Exh. 1).

27. Members of the Independence, Missouri Police Department did not participate in the execution of the search (Tr. at 25). The merely provided perimeter security (Tr. at 69). The officers were in uniform and drove marked police cars (Tr. at 91). Detective Rosewaren wore plain clothes and drove an unmarked vehicle (Tr. at 91-92).

28. This was the only time a search of Defendant's residence pursuant to the conditions of his supervision had ever been conducted (Tr. at 35).

### III. LEGAL ANALYSIS

Defendant argues that the April 24, 2013, search of his residence was unconstitutional on grounds that Probation Officer Sedler lacked the requisite reasonable suspicion to conduct the search and that the probation office was acting as a "stalking horse" for police. These arguments are without merit.

"In the context of a probationary search condition, reasonable suspicion that the probationer has violated the terms of his probation is sufficient to justify a search." United States v. Becker, 534 F.3d 952, 956-57 (8th Cir. 2008)(citing United States v. Brown, 346 F.3d 808, 811 (8th Cir. 2003)("[W]hen a probationer is subject to a probationary search condition, the Fourth Amendment permits an officer to search pursuant to that [probationary] condition without a warrant based only upon that officer's reasonable suspicion that the probationer is violating his probation's terms.")). "Neither the presence of law-enforcement officers at the search nor the actual motivations for conducting the search change the result." Dunn v. Mattivi, 535 Fed. Appx. 535, 535 (8th Cir. 2013)(citing United States v. Knights, 534 U.S. 112, 122 (2001)(reasonableness of search evaluated under traditional Fourth Amendment analysis; no basis for examining official purpose); United States v. Brown, 346 F.3d 808, 811-12 (8th Cir.

8

2003)(no basis for examining official purpose or "actual motivations" of officers; Knights eliminated "stalking horse" or "investigatory purpose" inquiry)).

In this case, Defendant was subject to a search condition of release that allowed probation officers to perform a search based on "reasonable suspicion of contraband or evidence of a violation of a condition of release." Defendant's conditions of release prohibited him from possessing a firearm. Probation Officer Sedler reasonably believed Defendant had a gun. A confidential informant told an Independence, Missouri detective that he and Defendant had been involved in a burglary on April 22, 2013, and that at the time Probation Officer Sedler stopped by Defendant's residence, Defendant was hiding inside with the gun he used to commit the burglary. The informant provided an accurate description of his encounter with Probation Officer Sedler (i.e., stating Defendant had gone to run errands with his mother) and details of the burglary matched law enforcement information. This information, coupled with Defendant's March 19, 2013, refusal to show his hands to Probation Officer Koan and Defendant's extensive surveillance system was sufficient to justify a search. Furthermore, the evidence demonstrates that Defendant consented to the probation officers searching his residence. See Becker, 534 F.3d at 957 (citing United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990)). The April 24, 2013, search of Defendant's residence was constitutional.

## IV. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same,

9

unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                        /s/ Robert E. Larsen
                                                        ROBERT E. LARSEN
                                                        United States Magistrate Judge

Kansas City, Missouri
June 9, 2015